UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTOPHER WALLACE, | ) | Case No. |
| Plaintiff, | ) | |
| -against- | ) | COMPLAINT |
| CITY OF NEW YORK, DEPARTMENT OF EDUCATION, | ) | |
| Defendant. | ) | |

Plaintiff CHRISTOPHER WALLACE ("Mr. Wallace" or "Plaintiff"), by and through his attorneys, Levine & Blit, PLLC, complaining of defendant CITY OF NEW YORK, DEPARTMENT OF EDUCATION ("Department of Education" or "Defendant"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this civil action to remedy Defendant's unlawful employment discrimination based upon race in violation of the New York City Human Rights Law ("NYCHRL"), interference with his rights pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), and retaliation in violation of the FMLA.

2. Plaintiff seeks equitable and legal relief in the form of injunctive relief; monetary damages for past and future economic losses; compensatory damages, including, but not limited to, emotional distress, mental anguish, and humiliation; liquidated damages pursuant to the FMLA; punitive damages; reasonable attorney's fees; costs of this action; and any such other and further relief deemed just and equitable.

1

## JURISDCTION AND VENUE

3. This Court has jurisdiction over after this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

5. Mr. Wallace is a thirty (30) year-old black man who is a citizen of the State of New York.

6. The Department of Education is an agency of the City of New York.

7. Mr. Wallace was employed by Defendant as a paraprofessional from 2013 through about June 2018.

8. Plaintiff's final place of employment with Defendant was at P.S. 6 in Staten Island, New York.

9. At all times relevant to this action, Defendant was an "employer" within the meaning of all relevant federal, state, and local statutes.

10. At all times relevant to this action, Mr. Wallace was an "employee" of Defendant within the meaning of all relevant federal, state, and local statutes.

11. At all times relevant to this action, Defendant was a covered employer within the meaning of the FMLA.

12. At all times relevant to this action, Mr. Wallace was an employee entitled to FMLA rights and protections.

13. At all times relevant to this action, Mr. Wallace was qualified to hold his position of employment with Defendant through his knowledge, education, training, experience, and/or qualifications.

14. On August 12, 2019, Plaintiff served a Notice of Claim upon the Defendant concerning the subject matter of this civil action.

15. On November 6, 2019, Plaintiff was subjected to a 50(h) Hearing conducted by Defendant were Plaintiff was questioned under oath concerning the subject matter of this civil action.

## FACTUAL ALLEGATIONS

16. Mr. Wallace is a black male who began working for the Board of Education in or about September 2013.

17. Mr. Wallace began working at P.S. 6 (Corporal Allan F. Kivlehan School) on or about September 5, 2017 as a paraprofessional.

18. Out of approximately 62 staff members, Mr. Wallace was the only black employee at P.S. 6.

19. When Mr. Wallace first began working at P.S. 6, he was informed that he would be working with a child with multiple sclerosis who required a wheelchair.

20. Mr. Wallace had never worked with a student in a wheelchair before requiring significant physical help.

21. Mr. Wallace was told that he would be required to lift the child out of the wheelchair multiple times per day and that he would receive assistance from other paraprofessionals when lifting the child from the wheelchair.

22. On or about December 18, 2017, during a staff meeting consisting of the principal of P.S. 6, Elizabeth Waters ("Principal Waters"), the assistant principal of P.S. 6, and about 20 teachers and paraprofessionals, a paraprofessional named Elizabeth Scaparro asked Plaintiff, "Chris, what do they call black people in your neighborhood? Niggers, right?".

23. Despite this racially derogatory comment being used in front of the entire staff, including Principal Waters and the assistant principal, no corrective action was taken.

24. As a result, Mr. Wallace understood that P.S. 6 tolerated open racial discrimination against blacks.

25. Mr. Wallace complained to his union representative, Arthur Avila, the day after the racially derogatory comment was made.

26. After the staff meeting where the racially derogatory comment was made, Mr. Wallace was ostracized by his co-workers and superiors, including Principal Waters.

27. Mr. Wallace was also required to perform work outside of his job description while other paraprofessionals employed by P.S. 6 were not.

28. Without assistance that was otherwise required, Mr. Wallace was mandated to lift a student with multiple sclerosis out of his wheelchair so the student could use a bathroom.

29. When Mr. Wallace would ask for help with this student, he was ignored by other paraprofessionals and Principal Waters.

30. When Mr. Wallace informed Principal Waters that no one would help him with this student, Principal Waters did not intervene or provide assistance.

31. The student with multiple sclerosis was assigned to Mr. Wallace because this student was considered the most difficult child.

32. The student assigned to Mr. Wallace was the only student in a wheelchair.

33. Mr. Wallace was told to perform physical therapy duties, which he was not trained to do.

34. On or about January 30, 2018, Mr. Wallace was reprimanded for eating inside his classroom even though other non-black employees routinely eat in their classroom without discipline.

4

35. Around this same time, Mr. Wallace was reprimanded for lateness even though other non-black employees were late without discipline.

36. Mr. Wallace was also excluded from professional development that non-black employees were required to attend.

37. Specifically, Mr. Wallace was directed to stay with his student after dismissal because his student's bus was late.

38. Rather than wait for Mr. Wallace to return, Principal Waters knowingly started the professional development without him.

39. During or after work, Mr. Wallace found that his tires on his car were slashed numerous times between December 2017 and February 2018.

40. In February 2018, Mr. Wallace asked Principal Waters if he could go on FMLA leave to care for his mother who had cancer.

41. Principal Waters denied the request.

42. In about early March 2018, Mr. Wallace asked Principal Waters again for FMLA leave to care for his mother, which was denied for a second time.

43. On March 12, 2018, Mr. Wallace was suspended without pay for three days starting March 13, 2018.

44. When Mr. Wallace returned to work, he was falsely accused of time abuse and leaving his student unaccompanied by Principal Waters.

45. Mr. Wallace then made use of sick time to go home for a day and a half.

46. Mr. Wallace returned to work on March 19, 2018.

47. That same day, Principal Waters falsely accused Mr. Wallace of abandoning his student.

48. On March 20, 2018, Mr. Wallace was informed by the school safety office and a police

    officer not to enter the school because he had been suspended indefinitely without pay.

49. On June 25, 2018, Mr. Wallace was terminated by Principal Waters.

50. Mr. Wallace then timely appealed the termination.

51. The final decision on Mr. Wallace's appeal regarding his termination was issued on May

    15, 2019.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (Discrimination based upon Race in Violation of the NYCHRL)

52. Plaintiff repeats, realleges, and reiterates each and every allegation contained in

    paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiff is a member of the protected class.

54. Defendant was aware that Plaintiff is a member of the protected class.

55. Pursuant to the unlawful acts and practices alleged above, Plaintiff was treated less well

    than his non-black colleagues due to his race and suffered adverse employment actions.

56. These adverse actions arose under circumstances demonstrating that discrimination based

    upon race was at least a motivating factor in Defendant's conduct, because, among other

    things, Plaintiff was openly subjected to a racially derogatory comment in front of the

    principal without any remedial action being taken, Plaintiff was the only black staff

    member, and Plaintiff was ostracized after being subjected to a racially derogatory

    comment.

57. As a direct and proximate result of the Defendant's unlawful discriminatory conduct,

    Plaintiff has suffered, and continues to suffer, past and future economic losses, and severe

    mental anguish and emotional distress, including but not limited to, humiliation,

embarrassment, stress and anxiety, and loss of reputation, for which he is entitled to an award of compensatory damages.

58. Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, and were done with knowing or reckless disregard for Plaintiff's civil rights, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (Interference in Violation of the FMLA)

59. Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60. Plaintiff was entitled to make use of the rights and protections of the FMLA.

61. Defendant engaged in an adverse action, as described above, that interfered with Plaintiff's right to take FMLA leave.

62. Defendant's action was related to Plaintiff's attempted exercise of his FMLA rights.

63. Defendant intentionally interfered with Plaintiff's rights pursuant to the FMLA.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (Retaliation in Violation of the FMLA)

64. Plaintiff repeats, realleges, and reiterates each and every allegation contained in paragraphs 1 through 63 as if fully set forth herein.

65. As alleged above, Plaintiff engaged in a protected activity or activities under the FMLA.

66. Pursuant to the acts and practices alleged above, Defendant took an action that a reasonable employee would have found materially adverse.

67. A causal connection exists between the engagement in protected activity or activities and the adverse employment action as evidenced by the close temporal proximity between the protected activity or activities and the adverse employment action.

68. Defendant intentionally retaliated against Plaintiff for attempting to exercise his rights pursuant to the FMLA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant containing the following relief:

(a) An Order enjoining the Defendant from engaging in the unlawful conduct alleged here;

(b) An Order enjoining the Defendant to reinstate Plaintiff;

(c) An Order awarding monetary damages for the past and future economic losses suffered by Plaintiff as a result of Defendant's unlawful conduct;

(d) An Order awarding monetary damages to Plaintiff to compensate him for the severe emotional distress, mental anguish, humiliation, and loss of reputation, suffered as a result of Defendant's unlawful actions;

(e) An Order awarding liquidated damages to Plaintiff pursuant to the FMLA;

(f) An Order awarding punitive damages to Plaintiff in an amount to be determined by the trier of fact;

(g) An Order awarding Plaintiff his reasonable attorney's fees;

(h) An Order awarding Plaintiff his costs of this action; and

(i) Any such other or further relief deemed just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury in this action.


Dated:      February _19_, 2020
            New York, New York              LEVINE & BLIT, PLLC


                                            Justin S. Clark
                                            *Attorneys for Plaintiff*
                                            350 Fifth Avenue, Suite 4020
                                            New York, NY 10118
                                            Tel. (212) 967-3000
                                            jclark@levineblit.com